# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ALBANY DIVISION

| | | |
|---|---|---|
| SHIRLEY GAINES, et al., Plaintiffs, | : : : | CASE NO.: 1:63-CV-764 (WLS) |
| vs. | : | |
| DOUGHERTY COUNTY BOARD OF EDUCATION, et al., Defendants. | : | |

## BRIEF IN SUPPORT OF DEFENDANT DOUGHERTY COUNTY BOARD OF EDUCATION'S MOTION FOR DECLARATION OF UNITARY STATUS AND ENTRY OF FINAL JUDGMENT

COMES NOW the Dougherty County School Board, a defendant in the above-styled matter (hereinafter "Defendant Board"), through counsel, and respectfully files this brief in support of the Defendant Board's Motion for Declaration of Unitary Status and Entry of Final Judgment pursuant to Local Rule 7.1. Defendant Board shows that such relief should be granted for the reasons which follow.

I. PROCEDURAL HISTORY

The above-styled matter is a class action lawsuit filed by the parents of African American students enrolled in schools in the Dougherty County School System (hereinafter "DCSS") on April 5, 1963. Plaintiffs alleged that DCSS operated a racially segregated public school system consisting of seventeen (17) "White" schools which were reserved for White students, teachers, principals, and

other staff; and nine (9) schools for African Americans students, teachers, principals and other staff. Plaintiffs complaint sought permanent injunctive relief against DCSS, Defendant Board, individual members of Defendant Board, and the Superintendent of Schools in Dougherty County, Georgia to prevent defendants from engaging in policies, practices and customs of operating a biracial school system.

On June 13, 1977 this Court observed that initially this action was filed by parents on behalf of only the African American students enrolled in DCSS and was not brought on behalf of White students enrolled in DCSS. As a result, the Court determined that it created an unfair presumption that Defendant Board represented their interests. Thereafter, this Court ordered that an additional class of White students and parents be added as a defendant class.

This Court entered multiple orders adopting plans for desegregation culminating in a June 28, 1979 Order where this Court adopted a plan for the desegregation of high schools in the Dougherty County School System. *See* Exhibit A.[1] The high school plan was that each high school's student body will consist of (i) White students in number equal to one-half of the student body and residing closer 'as the crow flies' to the particular high school than all other White students and (ii) African American students in number equal to one-half of the student body and

---
[1] The Court's June 28, 1979 Order adopts the Court's April 6, 1979 Order which is attached as Exhibit B.

residing closer 'as the crow flies' to the particular high school than all other African American students. Similarly, on May 2, 1980, this Court entered an order adopting the current plan for desegregation of elementary and junior high (middle) schools. According to the plan, no elementary or junior high school's student body would deviate by more than 25% from the 50%-50% White-African American student ratio throughout the system. *See* Exhibit C.

In 1980, at the time the two respective plans were adopted, the number of students enrolled in DCSS were 20,553 students total with 9,160 White students and 11,393 African American students. In other words, 45% of the students enrolled in DCSS were White and 55% of the students were African American. *See* Exhibit D. Today DCSS has 1,418 students enrolled, 210 or 14% of the students are White. DCSS now has 1181 African American students or 83% of the students are now enrolled. *See* Doc. 45

II. LEGAL STANDARD

School boards that formerly operated a dual school system, in which African American students attended one set of schools and White students another, have been "clearly charged with the affirmative duty to take whatever steps might be necessary to convert to a unitary system in which racial discrimination would be eliminated root and branch." *N.A.A.C.P., Jacksonville Branch v. Duval County School,* 273 F.3d 960 (2001) (citing *Green v. County Sch. Bd. Of New Kent County,*

391 U.S. 430,437-438). A unitary system is one in which there is presently no *de jure* racial segregation, and the vestiges of former *de jure* segregation have been eliminated to the extent possible. *Freeman v. Pitts,* 503 U.S. 467, 494 (1992). If the unlawful *de jure* policy of a school system has been the cause of the racial imbalance in student attendance, that condition must be remedied. Until these goals are achieved, the Supreme Court has ordered district courts to supervise the efforts of desegregation that school boards that formerly practiced *de jure* segregation. *Brown v. Board of Education,* 349 U.S. 294, 301 (1955).

In order to be entitled to the end of federal court supervision, a formerly dual school system must be able to demonstrate that it has complied in good faith with the desegregation decree and eliminated the vestiges of prior *de jure* segregation to the extent practicable. In this connection this Court must examine DCSS and Defendant Board's progress in six areas (1) student assignments; (2) facilities; (3) faculty; (4) staff; (5) transportation; and (6) extracurricular activities. *Green*, 391 U.S. at 435.

Defendant Board "bears the burden of showing that any current imbalance [in these areas] is not traceable, in a proximate way to the prior violation. *Duval County School*, at 966; *See also Keyes v. School Dist. No. 1,* 413 U.S. 189, 208-09. The Supreme Court has recognized that some racial imbalances in our schools today are caused by external forces, such as demographic shifts, which are not the

4

result of segregation and which are beyond a school board's control. *Missouri v. Jenkins* 515 U.S. 70 (1995). Where there is no constitutional violation, a school board is under no duty to remedy racial imbalances. *Duval County School* at 966. As the Supreme Court of the United States has announced:

> Racial balance is not to be achieved for its own sake. It is to be pursued when racial imbalance has been caused by a constitutional violation. Once the racial imbalance due to the *de jure violation* has been remedied, the school district is under no duty to remedy imbalance that is caused by demographic factors. *Id.* (citing *Freeman* at 494.)

III.  DEFENDANT BOARD HAS ACHIEVED UNITARY STATUS

As detailed above, DCSS has experienced a significant shift in demographic characteristics since the inception of this case, DCSS and Defendant Board have maintained a desegregated student enrollment between schools that reflect the current overall racial composition of the District. Defendant Board maintains non-discriminatory policies and practices with respect to transportation and provides transportation to students in a non-segregated manner.

Defendant Board has not constructed or consolidated schools in a manner that would interfere with its desegregation obligations. The construction of all facilities is consistent with this Court's orders. Defendant Board offers a wide variety of student activities, and race is not a consideration for participation in those activities. Student participation in sports, student government, clubs, and

extracurricular and co-curricular activities reflects that activities are available to all students enrolled in DCSS regardless of race. Finally, Defendant Board has employed faculty and staff in a non-discriminatory manner as demonstrated in the 2019 Federal Report. (Doc. 45-1).

Defendant Board respectfully shows that any disparities in the racial ratio of students, faculty, and staff is solely based upon factors outside of the control of Defendant Board and DCSS and not based upon any constitutional deficiencies. Further, Defendant Board shows that it has effectively complied with requirements imposed under the June 29, 1979 Order and the May 2, 1980 Order and requiring further action to create a racial balance would prove to be onerous and not in the best interest of students enrolled in DCSS as Defendant Board has successfully eliminated the vestiges of prior *de jure* segregation.

IV. CONCLUSION

WHEREFORE Defendant Board prays this Honorable Court set this matter for a hearing to determine whether Defendant Board is entitled to a declaration of unitary status, vacate any and all outstanding injunctions and dismiss this case after finding that Defendant Board has met the *Green* criteria, referring to student assignment, faculty, staff, transportation, extracurricular activities, and facilities, and grant Defendant Board's motion declaring that DCSS has reached unitary status

and enter an order of final judgment concluding this matter and ending this Court's supervision of Defendant Board.

This 20th day of December 2019.

                                          Respectfully submitted,

                                          PERRY & WALTERS, LLP

By: /s/ Gary Lamar Jr.
     Gary Lamar Jr.
     Ga. Bar No. 712471
     Franklin T. Coleman, III
     Georgia Bar # 177490
     Franklin T. Coleman IV
     Georgia Bar # 177580
     Hayden Headley Hooks
     Georgia Bar # 786812

PERRY & WALTERS, LLP
Attorneys for the Dougherty County
Board of Education
Perry & Walters, LLP
212 N. Westover Blvd.
Post Office Box 71209
Albany, Georgia 31708
(229) 439-4000

# CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel of record with a copy of the foregoing "Brief in Support of Defendant Dougherty County Board of Education's Motion for Declaration of Unitary Status and Entry of Final Judgment" by filing same with the CM/ECF electronic filing system as required by the Court.

This 20th day of December 2019.

                                                   /s/Gary Lamar Jr.
                                                 Gary Lamar Jr.